UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 15-20854-Civ-SEITZ
                                   (12-20002-Cr-SEITZ)
                              MAGISTRATE JUDGE P. A. WHITE

WINFRED ADDISON LEE,

        Movant,

v.                                               REPORT OF
                                            MAGISTRATE JUDGE
UNITED STATES OF AMERICA,

        Respondent.
_____/


                        I.   Introduction

        The movant, a federal prisoner, has filed the instant motion
to vacate, pursuant to 28 U.S.C. §2255, attacking the
constitutionality of his convictions and sentences, entered
following a jury verdict in case no. 12-20002-Cr-Seitz.

        This Cause has been referred to the undersigned for
consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and
the Rules Governing Section 2255 Cases in the United States
District Courts.

        The Court has reviewed the movant's §2255 motion (CV-DE#1, 4),
together with the government's response (DE#17) to an order to
show, the Presentence Investigation Report ("PSI"), the court's
Statement of Reasons ("SOR"), and all pertinent portions of the
underlying criminal file, including the transcripts of trial and
sentencing.

                         II. Claims

This court, recognizing that the movant was proceeding *pro se,* has afforded him liberal construction pursuant to <u>Haines v. Kerner</u>, 404 U.S. 419 (1972). In his §2255 filings, the movant raises the following four grounds for relief:

1.  The trial court erred during the colloquy concerning his Sixth Amendment right to testify and improperly influenced him in making his decision not to testify..

2.  He received ineffective assistance of counsel at trial because of his attorney's failure to put the government's case through meaningful adversarial testing. Specifically, he complains that counsel (a) failed to call witnesses for the defense to testify about statements made to secure the search warrant and/or contradict a police officer's testimony; (b) failed to question or strike Jurors Nunez, Bonilla, and Ermillus, despite the fact that they were biased because they had family members who were police officers; and (c) failed to properly advise him concerning his right to testify.

3.  He received ineffective assistance of counsel at the sentencing hearing when counsel failed to investigate and argue that he did not have the predicate offenses necessary to classify him as an Armed Career Criminal.

4.  He received ineffective assistance of counsel on appeal when counsel failed to argue that the allegedly false statement made by a government witness to secure the Search Warrant was necessary for a finding of probable cause, as required when challenging the failure to hold a Franks hearing on appeal.

III.  <u>Factual Background and Procedural History</u>

Given the nature of the claims, a detailed factual and procedural history is warranted in this case.

2

A. <u>Facts Adduced at Trial</u>

On June 2, 2011, City of Miami Police Detective Ofren Vera responded to a tip that a black male named "Lee" was selling narcotics at 528 NE 78th Street (CR DE# 117, at 32-33). Detective Vera received the tip from a black female he had approached on suspicion of prostitution; he did not record her name or take her photograph (<u>Id.</u> at 107-09, 112). When Detective Vera arrived at the address, he watched Lee engage in a series of hand-to-hand transactions which Detective Vera suspected to be narcotics sales (<u>Id.</u> at 33-36). Detective Vera then approached Lee to make an undercover purchase of rock cocaine (<u>Id.</u> at 35, 41). He asked Lee for "hard," which was street slang for rock cocaine, and gave Lee $80 (<u>Id.</u> at 41-42). Lee took the money, went inside the first-floor, eastern apartment of 528 NE 78th Street, and returned seconds later with a bag containing rocks that tested positive for cocaine (<u>Id.</u> at 42-43, 61-62).

Detective Vera obtained a Search Warrant from the State (<u>Id.</u> at 62-63). In the affidavit submitted in support of the Search Warrant, Detective Vera described his surveillance, his observation of suspected narcotics sales, the undercover buy, and the positive test results. In the course of doing so, Detective Vera stated that his surveillance "stemmed from a complaint at 'The Premises' from an anonymous source" (CR DE# 116, Ex. 5, at 5-6).

On June 9, 2011, officers executed the Search Warrant for Lee's one-bedroom apartment and recovered two firearms, twenty-two rounds of ammunition, at least fifteen bags of marijuana, at least thirteen bags of cocaine, two digital scales, and $526 in United States currency (CR DE# 117, at 64, 66-81, 98-101).

B.   Indictment, Pre-trial Proceedings, Conviction,
Sentencing, and Direct Appeal

On January 3, 2012, a federal grand jury returned a four-count
Indictment charging Lee with two counts of possession with intent
to distribute a controlled substance, in violation of Title 21,
United States Code, Section 841(a)(1); one count of possession of
a firearm as a convicted felon, in violation of Title 18, United
States Code, Sections 922(g)(1) and 924(e); and one count of
possession of a firearm in furtherance of a drug trafficking crime,
in violation of Title 18, United States Code, Section 924(c)(1)(A)
(CR DE# 15). Lee proceeded to trial.

Before trial, Lee filed a motion to suppress the evidence
seized during the search, asserting he was entitled to an
evidentiary hearing under Franks v. Delaware, 438 U.S. 154, 98 S.
Ct. 2674 ("Franks hearing") (CR DE# 55). Lee argued that the
affidavit in support of the Search Warrant misrepresented that the
tip came from an "anonymous" source because Detective Vera knew
that the tip came from a black female prostitute (CR DE# 55). Lee
also filed motions for disclosure of Brady materials and the
identity of the anonymous source (CR DE# 49, 56).

On September 11, 2012, the District Court held a combined
hearing on the motions (CR DE# 116). After considering arguments
from both sides and denying Lee's request for disclosure of the
source's identity, the District Court denied Lee's motion to
suppress and request for a Franks hearing. The Court found that the
affidavit's description of the source as "anonymous" was not
intentionally or recklessly false because it was consistent with
the Standard Operating Procedures of Detective Vera's division, as
well as the dictionary definition of "anonymous" cited by Lee's

4

counsel at the hearing (CR DE# 65, at 3). Moreover, the Court found that the statement "was not necessary to the finding of probable cause" (CR DE# 65, at 3-4). During trial, the Court admitted evidence that had been seized pursuant to the warrant (CR DE# 117, at 82, 87-90, 94-101).

Trial began on September 17, 2012, with the jury selection process continuing on through the day. During voir dire, three prospective jurors—Bonilla, Ermilus, and Nunez—revealed that they have family members who are police officers (CR DE# 112, at 118-19, 123-24, 147). Both Ermilus and Nunez were directly asked by the Court if their relationships with police officers would affect their ability to be neutral or treat both sides on the same level playing field (Id. at 124, 147). Juror Ermilus said her son's status as a police officer would not affect her ability to be neutral (Id. at 124). Juror Nunez said that her cousin's position as a police officer would not cause her to be partial and that she would treat both the government and the defense the same. (Id. at 147). Juror Bonilla advised that although her cousin was a police officer, she did not talk to her cousin about his/her work and she would have no problem telling her cousin that she had found a defendant not guilty in a criminal case. (Id. at 118-119). None of these jurors expressed an inability to be fair and impartial and all were empaneled (Id. at 198). At the end of jury selection, the Court asked Lee if he was satisfied with his jury and he said, "Yes, Your Honor" (Id.). Juror Ermilus was dismissed for hardship reasons on the second day of trial, before the jury was sworn (CR DE# 117, at 6-7).

On September 19, 2012, the third day of trial, defense counsel alerted the Court ex parte that a surprise witness had come forward for the first time (DE:113, at 111). According to defense counsel,

5

the witness, Noble Malachi, who was a convicted felon and a friend of movant's, came forth alleging that he had been present on June 2, 2011, and that he had witnessed a female prostitute, not Officer Vera, purchase the drugs from Lee (<u>Id.</u> at 111-12). Defense counsel stated that he did not intend to call Malachi to the stand, and did not want to recall Detective Vera to further cross-examine him on the matter (<u>Id.</u> at 112-14).

At the conclusion of the government's case-in-chief, the Court addressed the movant regarding his right not to put on a case, and his right to testify (<u>Id.</u> at 174). Regarding the Defendant's right to testify, the following exchange took place:

> **The Court:** As to your right to testify yourself, do you understand that if you do testify, I will instruct the jury that they should, using the instructions that I have in the packet, evaluate your credibility the same way as they evaluate any other witnesses? Do you know that I would instruct them as to that?
>
> **The Defendant:** Yes.
>
> **Defense Counsel:** Judge, you will also have to instruct them that he is a convicted felon and they can take that into account.
>
> **The Court:** I was going to get to that.
>
> **Defense Counsel:** I'm sorry.
>
> **The Court:** First, I wanted him to know that there's a credibility issue; and then the second credibility issue, the Government can go into any of your prior convictions.

(<u>Id.</u> at 174-75).

The Defendant asked how "intimately" the government could go into his prior convictions, and after some discussion between the Court and counsel, the Court instructed the Defendant that the

government could ask whether it was true that the Defendant had been convicted of a felony twelve times, and possibly go into detail regarding the Defendant's prior drug trafficking cases that had occurred within the last ten years. (<u>Id.</u> at 174-76). Defense counsel added, "And most importantly is that they are entitled to argue in closing argument that he is a 12-time convicted felon and cannot be believed. . . . They can say that as many times as they like," (<u>Id.</u> at 176). The Court continued:

> **The Court:** That is one of the instructions that I will give, Mr. Lee, is that they can take into consideration whether or not somebody has a felony conviction and use that to evaluate whether or not they can rely on the credibility, the reason being that if somebody so disregards the law in the past, then it's probably likely that they're not going to respect the law by taking an oath to testify truthfully, especially if they are the person that has the greatest interest in the outcome of the case as the defendant. So you need to be aware of that possible argument and that line of cross-examination.

> **The Defendant:** Okay.

> **The Court:** If you decided not to testify, I would not allow Mr. Thakur to argue that you were trying to hide something, and I would instruct the jury, as I did in voir dire, that they cannot hold that decision not to testify or put on any defense against you. There are strategic reasons both for testifying and against testifying.

> **The Defendant:** Okay.

> **The Court:** I don't know your case well enough. You, I'm sure, talked you to your counsel about that. And I would recommend that you do talk to your counsel about the pros and the cons and the strategic reasons both for testifying and not testifying. However, it is your life.

> **The Defendant:** Yes.

> **The Court:** The ultimate decision as to whether or not

testify [sic] or not testify [sic] is the decision that
you must make. Your counsel can only give you their best
recommendation. But ultimately, it's your decision. Do
you understand that?

**The Defendant:** Yes, ma'am.

**The Court:** So your decision either to testify or not to
testify, you're going to be stuck with that decision. Do
you understand that?

**The Defendant:** Yes, I do.

**The Court:** So that if you decide to testify and you turn
out to be a lousy witness, you can't later –

**The Defendant:** Recant. I understand.

**The Court:** You can't say, you know, I shouldn't have done
it. Somebody made me do it. It's your decision and you
have to live with the consequences of that decision.  On
the other hand, if you decide not to testify, you can't
later say, ah, somebody told me not to do it, and if the
jury had only heard my story, things would have been
different.  Again, it's a significant decision that you
have to make and you're stuck –

**The Defendant:** I have to make.

(Id. at 177-82). The following day, when the Court asked Lee if he
was going to testify and after giving him additional time to speak
with counsel, the Court engaged in the following colloquy:

**The Court:** Have you had a chance to think through the
pros and cons?

**The Defendant:** Yes.

**The Court:** Have you personally made your decision?

**The Defendant:** Yes. I think it's safe to say they did a
wonderful job.

**The Court:** Okay. I agree with you. So you're electing not
to testify?

**The Defendant:** That's correct.

(CR DE# 118, at 22-23).

The jury convicted Lee of all counts (CR DE# 80, 112, 113, 117, 118).

Prior to sentencing, a PSI was prepared, applying the 2011 Federal Sentencing Guidelines Manual, which reveals as follows. Because the movant, who was responsible for 11.95 kilograms of marijuana, committed an offense involving at least 10 kilograms but less than 20 kilograms of marijuana, his base offense level was set at 16, U.S.S.G. §2D1.1(c)(12). (PSI ¶17). The defendant was an armed career criminal because he is subject to an enhanced sentence under provisions of 18 U.S.C. § 924(e), pursuant to § 4B1.4(a). (PSI ¶23). Pursuant to § 4B1.4(b)(3)(B), the offense level was 33. (PSI ¶23).  The total offense level was set at 33.

The probation officer next determined that the movant had a total of nine criminal history points and a criminal history category of IV (Chapter Five, Part A). (PSI ¶48). Pursuant to § 4B1.4(c)(3), the movant's criminal history category was also IV. (PSI ¶48).

Statutorily, as to each of Counts One and Two, the term of imprisonment was 0 to 20 years, 21 U.S.C. §841(b)(1)(C). As to Count Three, the minimum term of imprisonment was 15 years and the maximum term was life, 18 U.S.C. §924(e)(1). As to Count Four, a term of imprisonment of at least five years under 18 U.S.C. §924(c)(1)(A),(D)(ii) was required to run consecutive to any other term of imprisonment.  (PSI ¶95).  Based on a total offense level of 33 and a criminal history category of IV, the guideline imprisonment range was 188 to 235 months. As to Count Four, a term

9

of imprisonment of 60 months under 18 U.S.C. §924(c)(1)(A),(D)(ii) was to run consecutive to any other term of imprisonment, §5G1.2(a).(PSI ¶96).

Lee objected to the enhanced sentence as an Armed Career Criminal and the computation of his criminal history, arguing that his advisory guidelines range should have been 27-33 months' imprisonment. The Court overruled his objections and sentenced him to 240 months' imprisonment, followed by three years' supervised release. (CR DE# 105).

Lee appealed (CR DE# 98). He claimed that the District Court made an error in fact when determining whether to hold a <u>Franks</u> hearing, which led it to improperly deny the hearing and erroneously admit evidence discovered at his apartment pursuant to a defective search warrant (CR DE# 126). The Court found that the challenge to the denial of the <u>Franks</u> hearing was abandoned because Lee had failed to allege in his appellate brief that the false statement in the affidavit was necessary to a finding of probable cause in <u>United States v. Lee</u>, 548 Fed. Appx. 585 (11th Cir. Dec. 9, 2013). The mandate issued on January 8, 2014. Lee did not petition the Supreme Court for a writ of certiorari.

After the appeal, Lee filed a motion to correct the record, challenging the determination that he is an Armed Career Criminal (CR DE# 128). The Court denied the motion (CR DE# 131).

Movant returned to this court filing his initial <u>pro se</u> motion to vacate (Cv-DE#1) pursuant to 28 U.S.C. §2255 on **February 25,**

2015.[1] He also filed an amended complaint (CV DE# 7), a memorandum of law in support thereof (CV DE# 9), and a second amended complaint (CV DE# 13). After these filings, the government filed a response. (CV DE# 17).

## IV. <u>Threshold Issues-Timeliness</u>

The government rightfully does not challenge the timeliness of the movant's motion (Cv-DE#17). <u>See</u> 28 U.S.C. §2255(f).

## V. <u>General Legal Principles</u>

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to §2255 are extremely limited. A prisoner is entitled to relief under §2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. <u>See</u> 28 U.S.C. §2255(a); <u>McKay v. United States</u>, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. §2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir.

---

[1] "[U]nder the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." <u>Williams v. McNeil</u>, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); <u>see</u> <u>Fed.R.App.</u> <u>4(c)(1)</u> ("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."). Unless there is evidence to the contrary, like prison logs or other records, a prisoner's motion is deemed delivered to prison authorities on the day he signed it. <u>See</u> <u>Washington v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001); <u>See</u> <u>also</u> <u>Adams v. United States</u>, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

2004)(citations omitted). The "fundamental miscarriage of justice" exception recognized in <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent ...."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. <u>Rozier v. United States</u>, 701 F.3d 681, 684 (11th Cir. 2012); <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000); <u>Mills v. United States</u>, 36 F.3d 1052, 1056 (11th Cir. 1994); <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir. 1981). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. <u>Nyhuis</u>, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. <u>Sanders v. United States</u>, 373 U.S. 1, 16, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations ... or supported by different legal arguments ... or couched in different language ... or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. <u>Lynn</u>, 365 F.3d at 1234–35; <u>Bousley v. United States</u>, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); <u>McKay v. United States</u>, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." <u>Lynn</u>, 365 F.3d at 1232 n. 14 (quoting <u>Mills</u>, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable

on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235.

A meritorious claim of ineffective assistance of counsel can constitute cause. See Nyhuis, 211 F.3d at 1344. However, ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a §2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010).[2]

The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was

---

[2] In this case, man of the claims could have been, but were not raised on direct appeal. Construing movant's arguments liberally, he appears to fault appellate counsel for failing to assign them as error on appeal. Consequently, the claims have been analyzed under Strickland to ascertain whether he is entitled to relief sufficient to circumvent the procedural bar.

prejudiced by this inadequacy. Id., 466 U.S. at 686; Williams v.
Taylor, 529 U.S. 362, 390, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000);
Darden v. United States, 708 F.3d 1225, 1228 (11ᵗʰ Cir. 2013). The
standard is the same for claims challenging appellate counsel's
effectiveness. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir.
1987); Heath v. Jones, 941 F.2d 1126, 1130 (11ᵗʰ Cir. 1991)(quoting
Strickland, 466 U.S. at 688).

Keeping these principles in mind, the Court must now determine
whether counsel's performance was both deficient and prejudicial
under Strickland. As indicated, Courts must be highly deferential
in reviewing counsel's performance, and must apply the strong
presumption that counsel's performance was reasonable. "[I]t is all
too easy for a court, examining counsel's defense after it has
proved unsuccessful, to conclude that a particular act or omission
of counsel was unreasonable." Strickland, 466 U.S. at 689. See also
Chandler v. United States, 218 F.3d at 1314. "Surmounting
Strickland's high bar is never an easy task." Padilla v. Kentucky,
559 U.S. 356, 368, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284, 297
(2010). See also Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir.
2006)(citing Chandler v. United States, 218 F.3d at 1313).

As noted by the Supreme Court:

> An ineffective-assistance claim can function
> as a way to escape rules of waiver and
> forfeiture and raise issues not presented at
> trial, and so the Strickland standard must be
> applied with scrupulous care, lest "intrusive
> post-trial inquiry" threaten the integrity of
> the very adversary process the right to
> counsel is meant to serve. Strickland, 466
> U.S. at 689-690, 104 S.Ct. 2052. Even under de
> novo review, the standard for judging
> counsel's representation is a most deferential
> one. Unlike a later reviewing court, the

> attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed .2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S. at 690, 104 S.Ct. 2052.

Harrington v. Richter, 562 U.S. 86, 104, 131 S.Ct. 770, 788 (2011). See also Premo v. Moore, 562 U.S. 115, 121-22, 131 S.Ct. 733, 739-740, 2011 WL 148253, *5 (2011). If the movant cannot meet one of Strickland's prongs, the court does not need to address the other prong. Strickland, 466 U.S. at 697, 104 S.Ct. 2069 (explaining a court need not address both prongs of Strickland if the defendant makes an insufficient showing on one of the prongs). See also Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004); Brown v. United States, 720 F.3d 1316 (11th Cir. 2013).

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008)(citations omitted); Chandler, 218 F.3d at 1315. With regard to the prejudice requirement, the movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been

15

different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); Allen v. Secretary, Florida Dep't of Corr's, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).

Or, in the case of alleged sentencing errors, the movant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id. at 203.

Furthermore, a §2255 movant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406-07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr's, 697 F.3d 1320, 1333-34 (11th Cir. 2012); Garcia v. United States, 456 Fed.Appx. 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990)(citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)); United States v. Ross, 147 F. App'x 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail ... are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

As will be demonstrated in more detail infra, the movant is not entitled to vacatur on the claims presented.[3] When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively,

---

[3]Briefly, the evidence against the movant was more than sufficient to support his convictions. The movant has not shown that the result of the trial or appeal would have been affected had counsel proceeded differently. Further, no denial of due process has been demonstrated. To the contrary, it is clear after independent review of the record that the movant received a fair trial, and that no constitutional violations occurred. Consequently, he has failed to demonstrate that he is entitled to relief in this collateral proceeding.

Moreover, after independent review of the record in its entirety, any other claims, subclaims, or arguments not specifically addressed in this Report, individually identified, or otherwise subsumed within each of the claims presented herein, have been considered by the undersigned and are found to be without merit, warranting no further discussion.

infused the proceedings with unfairness as to deny the movant a fundamentally trial and due process of law. The movant therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9th Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the movant's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

## VI. Discussion of the Claims

Under **claim 1**, the movant argues that the trial court erred during the colloquy concerning his Sixth Amendment right to testify and improperly influenced him in making his decision not to testify.

With respect to claim 1, the movant's challenge to the Court's colloquy about his right to testify is procedurally barred because it could have been, but was not, raised on direct appeal. See United States v. Frady, 456 U.S. 152, 167-168 (1982).

Even if he could raise the claim, the record refutes his argument. Lee argues that the District Court made erroneous statements of law when advising him of his right to testify and the benefits and consequences that were associated with his decision.

The relevant portion of the transcript, which is provided

above, is clear that the Court's colloquy with Lee was sufficient. The Court correctly advised Lee that the decision to testify was his alone. The Court also cautioned Lee to weigh the pros and cons of his decision to testify. Contrary to Lee's assertions, at no point did the Court tell Lee that his prior convictions could be used to determine his guilt or that the jury would be instructed to such effect. The Court correctly advised Lee that his testimony would be treated as any other witness's testimony and that his credibility would be susceptible to attack like any other witness. Both the Court and counsel correctly advised Lee that his prior felony convictions could be used to impeach his credibility if they met certain evidentiary requirements.

The Court gave Lee a night, as well as extra time in court, to consider his decision regarding whether to testify and to discuss it with counsel. When asked if he wished to testify, Lee stated that he had elected not to testify and he added that his attorney "did a wonderful job." (CR DE# 118, at 22-23).

The Court's colloquy was extensive and the Court took great care to inform Lee and allow him sufficient time to consider whether or not to testify. Lee's claims alleging that his constitutional rights were violated with regard to his right to testify are belied by the record.  He is not entitled to relief under claim 1.

Under **claim 2(a)**, the movant argues that he received ineffective assistance of counsel at trial because of his attorney's failure to call witnesses for the defense to testify about statements made to secure the search warrant and/or contradict a police officer's testimony.

19

Lee asserts that trial counsel rendered ineffective assistance when he failed to call Noble Malachi to testify that Officer Vera lied when he testified that he purchased drugs from Lee. He specifically asserts that the witness would have testified that "no drugs were personally sold to agent by Lee, but to a neighborhood prostitute" (CV DE#13, at 17).

Lee cannot overcome the fact that counsel's decision not to elicit this testimony was a sound strategic decision. Nor can he demonstrate prejudice resulting from counsel's wise decision not to call another witness—a convicted felon who was present in the apartment with Lee while Lee was selling drugs—to present additional testimony corroborating Officer Vera's testimony that Lee was selling drugs out of his apartment, whether it was to the officer or a prostitute. This claim should be denied.

Likewise, Lee cannot establish that defense counsel rendered ineffective assistance by failing to recall Detective Vera and cross-examine him regarding Noble Malachi's statements. In order to do so, defense counsel would have had to elicit testimony regarding Lee's selling drugs to someone, and may have needed to mention that there was a third party who had witnessed Lee's selling drugs to the suspected prostitute. Defense counsel had already cross-examined Detective Vera at length about his interactions with the suspected prostitute; his observations of hand-to-hand transactions between the Defendant and others; the Detective's cocaine purchase; the search warrant; and the search of the apartment (CV DE# 117, at 107-147, 149-55).

The movant cannot prevail on this claim as counsel's strategic decision should not be second-guessed in this proceeding. It is

20

possible that retaining and then calling these witnesses would merely have supported the government's evidence, and thus hurt rather than aided in movant's defense. Thus, counsel's strategic decision in this regard should not be disturbed here. Strickland v. Washington, 466 U.S. 668, 690-91 (1984); United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); Coco v. United States, 569 F.2d 367 (5 Cir. 1978). In this case, counsel's strategic decision to forego calling these witnesses does not rise to the level of ineffective assistance. Moreover, even if counsel had called these witnesses, no showing has been made that this would have affected the outcome of the trial. Thus, petitioner cannot establish prejudice under Strickland and is entitled to no relief under claim 2(a) on this basis.

Under **claim 2(b)**, the movant argues that he received ineffective assistance of counsel at trial because of his attorney's failure to question or strike Jurors Nunez, Bonilla, and Ermillus, despite the fact that they were biased because they had family members who were police officers.

The right to a jury trial "guarantees to the criminally accused a fair trial by a panel of impartial 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961). See also Ross v. Oklahoma, 487 U.S. 81, 85 (1988)("It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury."). It is without question that *voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. See Rosales-Lopez v. United States, 451 U.S. 182, 188-89 (1981). Accordingly, effective assistance of counsel is required during the voir dire process. Brown v. Jones, 255 F.3d 1273, 1278-9 (11th Cir. 2001); Hughes v. United States, 258 F.3d 453, 456 (6th

Cir. 2001). Because *voir dire* involves considerations of strategy, deference is to be given to counsel's actions during *voir dire*. United States v. Boyd, 86 F.3d 719, 723 (7th Cir. 1996)("Decisions on selection of a jury are among the many entrusted to counsel rather than to defendants personally."); Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995). A defendant claiming ineffective assistance of counsel during *voir dire* must show that counsel's actions were "so ill chosen that it permeates the entire trial with obvious unfairness." Teague, 60 F.3d at 1172.

Moreover, since empaneled jurors are presumed impartial, see Smith v. Phillips, 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), for a movant to satisfy *Strickland's* prejudice prong, he must demonstrate that the juror selection process resulted in actual bias against him. Hughes, 258 F.3d at 458; see also Rogers v. McMullen, 673 F.2d 1185, 1189 (11th Cir. 1982)(defendant's Sixth Amendment right to a fair and impartial jury not violated absent a showing that a juror hearing the case was actually biased against him). Claims that the jury was not impartial must focus on the jurors who actually sat. See Ross v. Oklahoma, 487 U.S. 81, 86 (1988); Heath v. Jones, 941 F.2d 1126, 1133 (11th Cir. 1991)(holding that habeas petitioner can only raise the trial court's denials of challenges for cause of those venire members who eventually sit on the jury), cert. denied, 502 U.S. 1077 (1992).

Lee claims that he received ineffective assistance of counsel during *voir dire* when counsel did not question Jurors Bonilla, Ermilus, and Nunez about any bias they had resulting from their familial relationships with police officers. The record, described in detail above, shows that the Court colloquied the prospective jurors about their family members who were law enforcement officers and asked if they could be fair and impartial and render a verdict

of not guilty based on the evidence (CV DE# 112, at 118-19, 123-24, 147). Each juror assured the Court that their relative's status as a law enforcement officer would not affect his or her verdict (Id.). Lee has not demonstrated that the jurors' responses would have been any different had counsel engaged in an additional *voir dire* of the jurors. Counsel did not render ineffective assistance when he decided not to question the jurors any further.

The movant's allegations are speculative, conclusory, and wholly unsupported by anything other than the movant's present self-serving statements.  The movant has failed to establish deficient performance or prejudice under this ground. See Strickland.

Under **claim 2(c)**, the movant argues that counsel was ineffective in failing to properly advise him regarding his right to testify.

When a defendant claims that his attorney denied him his right to testify, the defendant must establish prejudice by showing that "there is at least a reasonable probability that, but for counsel's [interference with the defendant's right to testify], the result in th[e] case would have been different." Pericles v. United States, 567 F.Appx. 776 (11th Cir. 2014) (citing Nichols v. Butler, 953 F.2d 1550, 1554 (11th Cir.1992) (en banc) (in a "very close case" where the only evidence linking the defendant to the robbery "was the eyewitness identification of him by a store employee who had glimpsed him only briefly," there was "at least a reasonable probability" that, had the defendant's attorney not threatened to withdraw mid-trial if the defendant testified, the result in the case would have been different)). See also Miller v. United States, 562 F.Appx. 838 (11th Cir. 2014) (Defendant was not prejudiced by

defense counsel's alleged failure to inform him of his right to testify at trial for drug distribution conspiracy, as required to support his claim of ineffective assistance of counsel, in light of ample evidence of defendant's guilt); Glover v. United States, 522 F.Appx. 720 (11th Cir. 2013) (strong evidence of guilt includes the defendant's own statements). "[I]f counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify." United States v. Teague, 953 F.2d 1525, 1533 (11th Cir.1992) (en banc).

As is explained above, the court provided a detailed colloquy regarding his right to testify and gave him a chance to consult at length with his counsel regarding his right to testify.  The Court gave Lee a night, as well as extra time in court, to consider his decision regarding whether to testify and to discuss it with counsel. When asked if he wished to testify, Lee stated that he had elected not to testify and he added that his attorney "did a wonderful job." (CR DE# 118, at 22-23).  In addition, the movant cannot establish prejudice. There is not a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. See Strickland.

In light of the foregoing, the movant cannot establish prejudice as required under Strickland and is, therefore, not entitled to relief under claim 2(c).

Under **claim 3**, the movant alleges that he received ineffective assistance of counsel at the sentencing hearing when counsel failed to investigate and argue that he did not have the predicate offenses necessary to classify him as an Armed Career Criminal.

The movant's claim is belied by the record. Prior to the sentencing hearing, counsel filed objections to the Presentence Investigation Report and specifically challenged the predicate offenses giving rise to the determination that the Defendant is an Armed Career Criminal (CR DE# 87).

To the extent that the movant's argument rests on the premise that two of the offenses which were counted towards the three offenses requirement were actually the same offense and should not have been counted separately, he cannot establish prejudice. The movant raised the same claim in his post-appeal motion to correct the record. In denying the motion, the District Court considered the conviction records and noted that the records for the first conviction, burglary of a dwelling, Case No. F88-11712, showed that the burglary occurred at a dwelling owned at an address on Southwest 187th Street, between February 1, 1988 and February 4, 1998. The second conviction record showed that the defendant was convicted of battery on a law enforcement officer, Case No. F88-4743, which occurred at the same address on February 10, 1988, when the officer was investigating the burglary. The Court, citing United States v. Weeks, 711 F.3d 1255, 1261 (11th Cir. 2013), cert. denied, 134 S. Ct. 311 (2013), further noted that the burglary and the battery were not simultaneous offenses. Thus they were properly considered to be separate predicate offenses for purposes of the Armed Career Act. (CR DE# 131).

Lee advances a new theory to challenge his status as an Armed Career Criminal. He argues that both the Florida battery and burglary statutes are overbroad. He also mentions that Florida does not have an element of *mens rea* for drug offenses (CV DE# 13 at 22-23).

25

To the extent that the movant claims that counsel rendered ineffective assistance by failing to predict that the Supreme Court would issue its decision in <u>Descamps v. United States</u>, 133 S. Ct. 2276 (2013), he is not entitled to relief. "To be effective within the bounds set by <u>Strickland</u>, an attorney need not anticipate changes in the law." <u>Jackson v. Herring</u>, 42 F.3d 1350, 1359 (11th Cir. 1995). <u>See also Black v. United States</u>, 373 F.3d 1140, 1146 (11th Cir. 2004) ("[A]ppellate counsel's performance was not deficient for failing to predict what was not yet a certain holding," and where, at the relevant time, "the legal principle at issue [was] unsettled"); <u>United States v. Ardley</u>, 273 F.3d 991, 993 (11th Cir. 2001) ("[W]e have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel," even when the "issue was, in hindsight, a sure fire winner.").In light of the foregoing, he is not entitled to relief under claim 3.

Under **claim 4**, the movant argues that he received ineffective assistance of counsel on appeal when counsel failed to argue that the allegedly false statement made by a government witness to secure the Search Warrant was necessary for a finding of probable cause, as required when challenging the failure to hold a *Franks* hearing on appeal.

The sole issue on appeal was whether the district court had erred in denying the movant's request to hold a *Franks* hearing. In a pre-trial motion to suppress, Lee requested a *Franks* hearing and alleged that Detective Vera made a false statement in the affidavit used to secure the search warrant when he stated that the tip came from an anonymous source, rather than a suspected prostitute the Detective had met (CR DE# 55). The Court, finding that the statement was neither intentionally or recklessly false nor

necessary to the finding of probable cause, denied to the request for a *Franks* hearing (CR DE# 65). Appellate counsel raised the same claim on direct appeal but did not address whether the false statement was necessary for probable cause, and the Eleventh Circuit affirmed.

The movant's motion misstates the argument on appeal, now asserting that the false statement in the search warrant affidavit was not that the tipster was "anonymous," but that Detective Vera purchased the drugs from Lee when it was really the suspected prostitute, a theory that was not raised before the Court or on appeal (CV DE# 13, at 23).

Under either theory, the movant cannot demonstrate that appellate counsel's failure to address probable cause resulted in prejudice. The search warrant was issued because someone purchased drugs from Lee. The detective's affidavit established that he observed numerous drug transactions by Lee. After observing the transactions, he also purchased drugs from Lee. Whether the person who purchased drugs from Lee was the detective or a prostitute sent by the detective, there was probable cause to believe that evidence of drug trafficking would be found on the premises. In light of the foregoing, the movant is not entitled to relief on this ground.

Finally, none of the errors complained of either individually or cumulatively in this §2255 proceeding had a substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619 (1993). Consequently, no prejudice has been established arising from counsel's failure to pursue any of the foregoing claims either at trial, sentencing, or on appeal.

## VII. <u>Evidentiary Hearing</u>

To the extent movant requests an evidentiary hearing on these claims, it should be denied. The movant has the burden of establishing the need for an evidentiary hearing, and he/she would only be entitled to a hearing if his/her allegations, if proved, would establish his/her right to collateral relief. <u>See</u> <u>Townsend v. Sain</u>, 372 U.S. 293, 307 (1963). A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. <u>See</u> <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989), <u>citing</u>, <u>Guerra v. United States</u>, 588 F.2d 519, 520-21 (5th Cir. 1979). As discussed in this Report, the claims raised are unsupported by the record or without merit. No evidentiary hearing is required.

## VIII. <u>Certificate of Appealability</u>

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts. A §2255 movant "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. §2253(c)." <u>See</u> <u>Fed.R.App.P</u>. 22(b)(1). Regardless, a timely notice of appeal must still be filed, even if the court issues a certificate of appealability. <u>See</u> 28 U.S.C. §2255 Rule 11(b).

However, "[A] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. §2253(c)(2). To make a substantial showing of the denial of a constitutional right, a §2255 movant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336-37 (2003) (citations and quotation marks omitted); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000); Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). After review of the record in this case, the Court finds the movant has not demonstrated that he has been denied a constitutional right or that the issue is reasonably debatable. See Slack, 529 U.S. at 485; Edwards v. United States, 114 F.3d 1083, 1084 (11th Cir. 1997). Consequently, issuance of a certificate of appealability is not warranted and should be denied int his case. Notwithstanding, if movant does not agree, he may bring this argument to the attention of the district judge in objections.

## IX. Conclusion

It is therefore recommended that this motion to vacate be denied; that all pending motions, not otherwise ruled upon be dismissed, as moot; that a certificate of appealability be denied; and, the case closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 13th day of April, 2016.

UNITED STATES MAGISTRATE JUDGE

cc:  Winfred Addison Lee, <u>Pro Se</u>
     Reg. No. 97760-004
     Coleman Medium
     Federal Correctional Institution
     Inmate Mail/Parcels
     Post Office Box 1032
     Coleman, FL 33521

     Tonya R. Long
     U.S. Attorney's Office
     Major Crimes
     99 NE 4th Street
     Miami, FL 33132